UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff-Respondent, ) | |
| ) | |
| v. ) | 2:05-cr-76 |
| ) | |
| JAMES R. WINBUSH JR. ) | |
|     Defendant-Petitioner. ) | |

## OPINION AND ORDER

*Pro se* petitioner James R. Winbush, Jr. seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [DE 171.] Winbush seeks relief because he believes 1) he received ineffective assistance of counsel based on six alleged failures of his attorney, 2) this Court's denial of two motions to suppress and a motion seeking funds for a fingerprint expert was an abuse of discretion, 3) the government withheld impeachment evidence and other evidence that was material to his defense, 4) that "cocaine base" is not a controlled substance, and 5) that the Fair Sentencing Act of 2010 decriminalizes the conduct for which he was convicted. As explained in detail below, none of these alleged errors warrant granting his petition.

### BACKGROUND

The Seventh Circuit summarized the facts in this case on direct appeal. *See United States v. Winbush*, 580 F.3d 503, 505-508 (7th Cir. 2009). Winbush was arrested on December 20, 2004 when the Gary Police Department staged a controlled purchase of over five grams of crack cocaine from him. Police followed Kenneth Jones, a police informant, as he parked his vehicle on the 2300 block of Kentucky Street in Gary. Winbush arrived in another vehicle moments later, and police observed what appeared to be a narcotics transaction. Their suspicions were

confirmed when Jones returned to the police station with 5.8 grams of cocaine base. Police tailed Winbush and a passenger after they left the scene and pulled them over approximately two blocks from where the drug deal had occurred. As officers approached the vehicle, they saw a gun in Winbush's right hand, pointed upward. Winbush shoved his passenger, Timothy Frazier, out the side door, then fled through the same door. Frazier stayed on the ground, as the police had commanded, and was taken into custody. Police found 288 grams of marijuana in a bag on Frazier's chest. Frazier later testified that Winbush told him, "I might need you to run with this," and left the bag as he fled.

Police chased Winbush and caught him on the 2300 block of Kentucky Street, near where he had just sold crack to Jones. Officers struggled with Winbush but ultimately subdued and arrested him. Police noticed that he was no longer wearing the stocking cap and distinctive black and white leather jacket that he had on when he fled his vehicle. Nor did Winbush possess a firearm. Winbush, however, did have $900 in cash, $200 of which was photocopied money that police had provided Jones to consummate the undercover drug buy.

Following footprints in the snow, police retraced their path of pursuit, particularly concerned with finding Winbush's firearm. They recovered much more. One block to the east, police recovered five clear knotted plastic bags containing 9.3 grams of crack cocaine. In the 2300 block of Kentucky Street, they found Winbush's leather jacket, which contained a .40-caliber Ruger handgun and a plastic bag holding 20.2 grams of crack cocaine in fifty-two separate baggies. Finally, near Winbush's vehicle, police found the stocking cap that he was wearing when he fled.

Winbush was with one count of distribution and one count of possession with the intent

2

to distribute five grams or more of cocaine base; possession with the intent to distribute marijuana; unlawful possession of a firearm by a felon; and possession of a firearm in furtherance of a drug trafficking crime.

After various pretrial motions and multiple continuances, trial was scheduled for November 13, 2007. On October 3, 2007, the government filed its Notice of Expert Witnesses, which notified Winbush that the government planned to call, among others, Michael Shay, a forensics examiner with the FBI; Deputy Commander Michael Reilly of the Lake County Police Department; and FBI Special Agent Mark Becker. The government indicated that Shay would testify "consistent with the lab reports that have been provided in discovery regarding the fingerprint analysis in this case." The purpose of Shay's testimony was to blunt the expected defense cry of "Where's the fingerprints?" While the lab report indicated that no latent fingerprints of value were discovered on the physical evidence recovered from the scene of Winbush's arrest, that is not surprising. Reilly would testify as a fingerprint expert "about the difficulties in obtaining latent fingerprints from different materials and surfaces." And Becker would testify as an expert regarding the "practices, methods and structure of narcotics trafficking." At the final pretrial conference on November 2, 2007, the government and Winbush informed the magistrate judge that they would stipulate to Shay's testimony. The government also discussed the other expert testimony, and Winbush informed the magistrate judge that he would present no expert witnesses at trial.

On November 8, six days after the pretrial conference and only five days before trial, Winbush filed five additional motions. Among these were motions to suppress evidence and a motion for a fingerprint identification expert. Winbush requested a fingerprint expert "to

examine the submitted items of physical evidence, and if no latent fingerprints are present, to testify as to its meaning." The magistrate judge denied this motion, stating that "on the Friday before trial in a case that's been pending for over two years, the request . .. is just woefully late." The magistrate judge also denied Winbush's Motion to Continue, and the trial began on November 13, 2007.

At trial, the government introduced testimony from law enforcement involved in Winbush's investigation and arrest, as well as the expert testimony discussed above. The government read Shay's stipulated testimony: that "no latent prints of value were detected" on various pieces of physical evidence found at the scene of Winbush's arrest. The government then called Deputy Commander Reilly, who explained that the ability to recover latent prints often depends on a variety of factors, such as the weather and the surface of the item, and it would be possible for a person to touch something and leave no identifiable prints. Reilly stated that it is "probably more than the norm" to find no identifiable prints on a handgun.

On November 15, 2007, the jury found Winbush guilty on all five counts. This Court sentenced Winbush to 140 months' imprisonment on the three drug possession and distribution counts, to run concurrent with a 120-month sentence for possessing a firearm as a felon. The court also sentenced Winbush to 84 months' imprisonment for possessing a firearm in furtherance of a drug trafficking offense, to run consecutive with his other sentences, giving Winbush a total sentence of 224 months.

Winbush appealed his conviction to the Seventh Circuit raising three issues: (1) whether the district court erred by denying his motion to retain a fingerprint expert; (2) whether the court properly admitted Agent Becker's expert testimony; and (3) whether the court erred in

calculating Winbush's base offense and criminal history levels. The Seventh Circuit affirmed Winbush's conviction and sentence. *Winbush*, 580 F.3d at 515.

## DISCUSSION

A motion under Section 2255 allows a federal prisoner "in custody . . . claiming the right to be released" to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A district court may deny a Section 2255 motion without a hearing "where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Torzala v. United States*, 545 F.3d 517, 525 (7th Cir. 2008).

### I. Ineffective Assistance of Counsel Claims

A Section 2255 motion alleging ineffective assistance of counsel generally must establish that: (1) counsel's performance was constitutionally deficient because it fell below a minimum level of objective professional standards; and (2) but for counsel's deficient performance, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 686-694 (1984); *see also Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002). Counsel is presumed effective, and the petitioner bears a heavy burden to establish otherwise. *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000). Winbush raises six arguments for ineffective assistance of counsel; none have merit.

#### A. Failure to investigate the facts of the case.

In his Section 2255 motion, Winbush argues that his "[t]rial counsel was ineffective for failure to investigate which resulted in his failure to challenge the sufficiency of the evidence, file timely suppression motions, and motions for expert witnesses." [DE 171 at 18.] However,

5

Winbush does not specify what areas of the case his trial counsel should have investigated or what these investigations would discover that was not already known.

The Seventh Circuit has held that a defendant who alleges that their counsel failed to investigate "has the burden of providing the court sufficiently precise information, that is, 'a comprehensive showing as to what the investigation would have produced.'" *United States ex. rel v. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990) (quoting *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987)). "[T]he petitioner must demonstrate what the attorney would have discovered had a proper investigation occurred, as well as what evidence would have been introduced at trial." *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997). Defense counsel need not "track down every lead or must personally investigate every evidentiary possibility before choosing a defense and developing it." *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987). Furthermore, acts or omissions of an attorney that may be classified as trial tactics cannot be considered by a court in evaluating an ineffective assistance of counsel claim. *See United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997).

Winbush does not delineate what areas of the case his trial counsel should have investigated. Furthermore, he does not indicate what his trial counsel would have found, and whether that evidence would even be admissible or introduced at trial. Winbush's conclusory allegations of ineffective assistance are not enough under *Strickland* to show that his counsel's conduct fell below minimum standards of objective professionalism and that the result would have prejudiced him. Therefore, Winbush's claim of ineffective assistance for failure to investigate is denied.

**B.** **Failure to timely file motions to suppress and a motion for funds for a fingerprint expert.**

Winbush next argues that his trial counsel's failure to timely file three motions – two to suppress evidence and another seeking funds for a fingerprint expert – constitutes ineffective assistance of counsel. [DE 171 at 12-16.] Winbush's trial counsel filed these three motions on November 8, 2007, five days before trial was set to begin, and the Court denied them because they were untimely. The failure to timely file these motions is, however, insufficient to satisfy either deficient performance or prejudice to Winbush under the standards of *Strickland*.

The Sixth Amendment standard of attorney competence does not require an attorney to pursue a course of action that is clearly destined to prove unsuccessful. *See United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990), *cert. denied*, 499 U.S. 942 (1991) ("It is not ineffective assistance for counsel to not file a meritless motion."). Moreover, in the context of motions to suppress, the prejudice prong of *Strickland* also requires a showing that the suppression issues raised have merit. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) ("When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious."). None of the three motions that Winbush challenges here had any merit, and they therefore do not support a claim for ineffective assistance of counsel.

First, Winbush's Motion to Suppress Photographs [DE 114] argued that the search warrant that authorized the search of Winbush's car was overly broad and thus that the photographs found in the car of Winbush wearing his distinctive black and white jacket (which contained 52 baggies of crack and a handgun) should have been suppressed. Specifically, the motion argued that the search warrant authorized an overly broad search because it authorized law enforcement to "diligently search for one spent bullet and all Indicia Materials related to the

operation of a illegal drug trafficking operation." [DE 114 at 1.]

This motion was without merit. It is true that the Fourth Amendment "categorically prohibits" the issuance of any warrant that does not describe the objects to be seized with particularity. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). This particularity requirement does not mean, however, that the description must be "elaborately detailed," *United States v. Somers*, 950 F.2d 1279, 1285 (7th Cir. 1991), or that it "minutely identify" every item, *United States v. Prewitt*, 553 F.2d 1082, 1086 (7th Cir. 1977). It must be as specific as the circumstances and the nature of the activity under investigation permit. *United States v. Shoffner*, 826 F.2d 619, 630 (7th Cir. 1987). The instant search warrant was not overly broad and was specific enough to allow an officer executing the warrant to reasonably know what items were to be seized – those indicating the operation of a illegal drug trafficking activity. Moreover, even if the search warrant was overly broad, the photographs would not have been suppressed due to the good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 926 (1984); *United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir. 1992) ("Evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant will not be suppressed unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.").

Second, Winbush also filed a Motion to Suppress Physical Evidence [DE 115], which sought to suppress the fifty-two plastic baggies containing cocaine base and the .40 caliber Ruger handgun on the grounds that law enforcement lacked probable cause to search his jacket. This motion was also a loser because abandoned property is not subject to Fourth Amendment protection. *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. McDonald*, 100

F.3d 1320, 1327 (7th Cir. 1996). The throw-away-an-incriminating-object-as-you-are-fleeing strategy is a Fourth Amendment classic. *See*, *e.g.*, *California v. Hodari D.*, 499 U.S. 621 (1991); *United States v. Williams*, 285 Fed. Appx. 284 (7th Cir. 2008). It is constitutionally sound for officers to seize abandoned property as a result of a lawful pursuit of a criminal suspect who relinquishes an object. *Hodari D.*, 499 U.S. at 629 ("The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied."); *Williams*, 285 Fed. Appx. at 287 (By the time defendant was stopped by the police, "he had already thrown the gun out the window, thus abandoning it along with any right he may have had under the Fourth Amendment to object to its admission at trial.").

Lastly, Winbush argues that his attorney failed him by untimely filing his motion for funds for a fingerprint expert [DE 116]. Once again, this motion was meritless. As the Seventh Circuit found on direct appeal, a fingerprint expert was unnecessary for Winbush's defense. *Winbush*, 580 F.3d at 509-10. Winbush had "no plausible defense that would have rendered such an expert necessary," and "[t]he evidence against him was overwhelming, and he needed no expert to explain the absence of fingerprints on the physical evidence could mean that he never touched that evidence." *Id.* at 509. Furthermore, Winbush had the opportunity to elicit – and in fact did elicit – this information from the government's expert fingerprint witness on cross examination.

Therefore, Winbush's claim for ineffective assistance with respect to these three motions is denied.

### C. Failure by trial counsel to inform the defendant about the Stipulation of Facts that he signed at trial.

Winbush next argues his trial counsel was ineffective because he stipulated to certain

9

facts at trial. He alleges that "[d]uring trial counsel further mislead [*sic*] me, misinformed me when he asked me to sign a 'Stipulation of Facts' form without informing what the document was pertaining to." [DE 171 at 7.] Winbush claims that his trial counsel coerced him into signing the stipulation and that trial counsel informed him that the document was related to the government not bringing further charges against him. [*Id.*]

As the government notes, there were two stipulations entered at trial: Exhibit 20 stipulated that fingerprint expert witness Michael Shay examined the items of evidence for latent fingerprints and that no latent prints of value were detected, and Exhibit 33 stipulated that Winbush had been convicted of a prior felony. Winbush doesn't specify which of these two stipulations he is objecting to in his motion. That oversight doesn't matter, however, because neither of these stipulations are sufficient to demonstrate that Winbush's trial counsel was deficient.

Counsel's decision to stipulate as to certain facts may be done for tactical reasons. *See United States v. Kennedy*, 797 F.2d 540, 543 (7th Cir. 1986). Exhibit 20 did not stipulate to any material facts in any of the counts of Winbush's Second Superseding Indictment. Rather, that stipulation simply established that Shay had examined some items of evidence and had found no latent fingerprints of value. Furthermore, that stipulation was not prejudicial to Winbush because his trial counsel cross-examined Michael Reilly, the government's other fingerprint witness, regarding Shay's finding. In doing so, the jury had full opportunity to hear Reilly testify about how cold temperatures can impact the probability that latent prints of value are found. Reilly also testified that useful fingerprints can be found on bullet cartridges, and there were smooth areas on the firearm in question on which one could expect to possibly find useful

fingerprints.

The stipulation regarding Winbush's prior felony conviction was also a strategic decision on the part of trial counsel – and a good one at that. The government typically proves a defendant's prior conviction by introducing a certified copy of the prior conviction, record of judgment, or similar papers identifying the previous offense, and linking them to the defendant. It is common practice for defendants to stipulate to the fact of a prior conviction out of fear that a jury will be prejudiced upon learning the nature of the prior conviction. Therefore, rather than indicating deficient performance, this stipulation can be seen as a smart tactical decision to protect the defendant from prejudice from the jury. That was especially true in this case where Winbush's prior felony convictions were all for cocaine possession. [DE 95 at 4]. Moreover, Winbush fails to demonstrate prejudice under *Strickland* because if trial counsel had not entered into this stipulation the jury may have been tainted by gaining knowledge of the substance of Winbush's prior felony conviction.

Therefore, Winbush's claim for ineffective assistance with respect to the two stipulations of fact he entered into is denied.

### D. Failure by trial counsel to object to the government's questioning of witness Timothy Frazier.

Winbush next alleges that his "[c]ounsel also failed to raise objections to the line of questioning relevant to the testimony of Timothy Frazier which was requested by this petitioner." [DE 171 at 7.]

Whether to object or not at trial is a quintessential matter of trial strategy. A lawyer might reasonably believe that to object too often may make him look obstreperous or may send a message to the jury that there is something to hide. So it isn't at all surprising that great

deference is given to trial counsel regarding such trial tactics and strategies. *Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003) (denying claim that counsel was ineffective in failing to object because "[a] competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in without drawing additional attention to it, such as an objection would"). Moreover, "[w]ith regard to the performance prong, the defendant must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance." *United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1998).

Winbush does nothing more than make conclusory allegations of his counsel's failure to object to the government's questioning of Timothy Frazier. He does not point to any line of questioning he found objectionable and on what grounds. Winbush's unfounded contention thus fails to establish both the performance and prejudice prongs of *Strickland*. Therefore, Winbush's claim for ineffective assistance with respect to his attorney's failure to raise objections during the testimony of Timothy Frazier is denied.

### E. Failure by trial counsel to challenge the sufficiency of the government's evidence.

Winbush next alleges that his trial counsel failed to challenge the sufficiency of the evidence in relation to the seized drugs and weapons. He contends that "[c]ounsel was also requested to challenge sufficiency of the evidence as it related to the fact that of the eighty (80) exhibits relating to evidence that was presented by the prosecution, non [*sic*] of these items had any of the petitioner's fingerprints on them." [DE 171 at 12-13.] Winbush also states that "[c]ounsel further failed to raise the issue that of all of the officer's [*sic*] at the scene and participating in the alleged controlled buy, that none of the officer's [*sic*] saw petitioner hand the said narcotics to their informant and his failure to challenge the sufficiency of the evidence as it

related to all of the exhibits relative to the three packages of cocaine all having different purity ratio's [*sic*] and being in different packages, and discovered in different locations." [DE 171 at 15.]

This allegation of ineffective assistance is a complete non-starter for the simple reason that Winbush's trial counsel *did* challenge the sufficiency of the government's evidence. At the conclusion of the government's case, Winbush's trial counsel made a Rule 29 motion for judgment of acquittal. Trial counsel argued, as to counts one and two of the Second Superseding Indictment, that the government failed to provide sufficient evidence that the substance allegedly distributed by Winbush was crack cocaine. Winbush's trial counsel argued, as to count four of the indictment, that the government failed to prove Winbush possessed the firearm because there was no fingerprints or anything connecting Winbush to the firearm. Finally, as to count five of the indictment, he argued that the government had not proven a violation of 18 U.S.C. § 924(c) because the government had not proven the underlying drug trafficking offenses. This Court denied Winbush's Rule 29 motion, finding that the government's evidence was sufficient to support a jury finding of guilty as to all five counts charged against him. At the close of the defense's case, Winbush's trial counsel renewed his Rule 29 motion and stood on his earlier argument. The Court denied the renewed motion for the same reasons.

Therefore, Winbush's claim for ineffective assistance with respect to his attorney's alleged failure to challenge the sufficiency of the government's evidence is denied.

### F. Failure by trial counsel to challenge the chain of custody for the government's drug exhibits.

Finally, Winbush alleges that his trial counsel provided ineffective assistance because he failed to "raise issues relevant to . . . the chain of custody of the alleged evidence." [DE 171 at

5.] Specifically, Winbush claims that his fingerprints were not on any of the drug evidence recovered at the scene and that crime scene investigators failed to arrive at the scene and "photograph and document the evidence." [DE 171 at 14.]

This allegation of ineffective assistance is another non-starter because Winbush's trial counsel did make efforts to challenge the chain custody for the drug exhibits. Winbush's counsel objected to Exhibit 14, which was a photograph of drugs. This Court admitted that evidence over the defense's objection. Winbush's trial counsel also objected to the admission of Exhibit 24, which was the baggy with marijuana and the other baggies that contained cocaine. This Court noted the defense's objections were probably made for the purposes of chain of custody, but ultimately found there was sufficient foundation for the exhibit and overruled the Defense's objections.

Therefore, Winbush's claim for ineffective assistance with respect to his attorney's alleged failure to challenge the chain of custody for the government's drug exhibits is denied.

## II. Denial of Petitioner's motions to suppress and motion for funds for a fingerprint expert as untimely constituted an abuse of discretion.

As previously noted, five days before trial was set to begin Winbush's trial counsel filed motions to suppress and a motion requesting funds for a fingerprint expert, which were denied as untimely. Winbush now contends that the "Court abused its discretion in its denial of untimely motion to suppress evidence and notice for expert witness." [DE 171 at 4.]

With respect to his motion for funds for a fingerprint expert, Winbush already appealed this decision to the Seventh Circuit, which held that this Court was within its discretion to deny Winbush's motion as untimely and found that a fingerprint expert was unnecessary for his defense. *Winbush*, 580 F.3d at 509-10. A § 2255 petition isn't a chance for a do over. Winbush

is barred from relitigating this claim since it was already decided on appeal and he has not shown any changed circumstances that would justify relitigation. *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004); *Daniels v. United States*, 26 F.3d 706, 711 (7th Cir.1994) ("[A] Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal.").

With respect to his motions to suppress, Winbush failed to raise this issue on direct appeal. This argument must thus also be dismissed because "[a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for and actual prejudice resulting from the failure to assert it." *Mankarious v. United States*, 282 F.3d 940, 943 (7th Cir. 2002), *cert. denied*, 537 U.S. 823 (2002).

### III.  Failure to turn over evidence in violation of *Brady* and *Giglio*.

Next, Winbush alleges that the government withheld impeachment evidence and evidence that was material to the defense. Specifically, he states "of all the evidence that the government received from the Gary Indiana Police Department in relation to the incidents alleged in the indictment the government failed to release the (IAD) documents relevant to the alleged controlled buy and the shooting." [DE 171 at 5.]

Winbush failed to raise this issue on direct appeal and is therefore, once again, procedurally barred from raising this issue. *Mankarious*, 282 F.3d at 943. Moreover, even if this argument were not procedurally barred, Winbush would be unable to establish the requisite factors under *Brady* and *Giglio*. *Brady* requires that before a new trial can be granted for withholding evidence, the moving party must establish that: (1) the prosecution suppressed evidence; (2) the evidence allegedly suppressed was favorable to the defense; and (3) the evidence was material to an issue at trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). For the

purposes of *Brady* favorable evidence is defined as evidence that is exculpatory in nature or tends to impeach a prosecution witness. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). Winbush fails to establish that any such material exists, much less that it was favorable or that it was material to an issue at trial.

**IV.    Cocaine base is not a controlled substance.**

Winbush next argues that two of the counts he was convicted of – distribution and possession with the intent to distribute five grams or more of cocaine base – are not actually crimes because "cocaine base" is not a controlled substance. [DE 179.] More specifically, he contends that cocaine base is not statutorily defined as a controlled substance under 21 U.S.C. § 802(5) and (6) and that Congress does not consider cocaine base to be a controlled substance. *Id.*

Winbush's reply brief focuses entirely on this argument and is an exhaustive exercise of construing 21 U.S.C. § 802 and analyzing the Supreme Court's recent decision interpreting "crack cocaine" and "cocaine base" in *DePierre v. United States*, 131 S.Ct. 2225, 2230-32 (2011). But ultimately all of this analysis is unable to overcome the fact that "cocaine base" is clearly a controlled substance. 21 U.S.C. § 802(6) defines a controlled substance as "a drug or other substance, or immediate precursor included in schedule I, II, III, IV, or V of part B of this subchapter." Schedule II of 21 U.S.C. § 812 lists the following substances, among others: "coca leaves ... cocaine, its salts, optical and geometric isomers ... or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph." 21 U.S.C. § 812. Although "cocaine base" is not specifically listed in Schedule II, it is a compound or mixture that contains cocaine and, therefore, it falls under Schedule II. And, of

course, 21 U.S.C. § 841, the statute under which Winbush was convicted, specifically cites "cocaine base." Moreover, the Supreme Court held in *DePierre* that "cocaine base" means not just "crack cocaine," but also cocaine in its chemically basic form. *DePierre*, 131 S.Ct. at 2230-32 (2011). Winbush's argument that cocaine base is not a controlled substance thus fails.

**V.  The Fair Sentencing Act decriminalizes Winbush's conduct.**

Finally, Winbush argues that the Fair Sentencing Act of 2010 ("FSA") decriminalizes the conduct of which he was convicted. Specifically, he claims that "[t]he Fair Sentencing Act amended the statute by striking the 5 grams or more, under § 841(a)(1)(b)(1)(B)(iii), and inserting 28 grams or more [and that] [t]his amendment caused the Petitioner's conduct, of distributing 5 grams or more, to be literally nonexistent under the statute of his conviction, § 841(a)(1), for it was the conduct of distribution of 5 grams or more of 'cocaine base' by which the government charged the Petitioner with a violation of Title 21 U.S.C. § 841(a)(1)." [DE 179 at 5.]

The FSA amended the Controlled Substances Act and Controlled Substances Import and Export Act by resetting the drug quantities required to trigger mandatory minimum sentences. The minimum quantity of cocaine base required to trigger the mandatory minimum was increased from 5 grams to 28 grams, but the FSA does not apply retroactively to prisoners that were already sentenced under the previous statute. *See United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010) (holding that the general federal savings statute, 1 U.S.C. § 109, operates to bar the retroactive application of the FSA). The FSA was signed into law on August 3, 2010. Winbush's sentencing occurred prior to August 3, 2010, and thus the FSA does not apply to his sentence.

17

While the FSA has no retroactive application, the recent amendments to the Sentencing Guidelines implementing the FSA are retroactive as of November 1, 2011. Winbush thus may have an argument that his sentence should be reduced pursuant to the new Sentencing Guidelines, but any such argument would have to be brought in a motion pursuant to 18 U.S.C. §3582(c)(2), which permits a court to resentence a defendant who was originally sentenced on the basis of a guideline that has subsequently been lowered and made retroactive by the Sentencing Commission. To pursue this possibility, Winbush must file a motion requesting such relief.

## CERTIFICATE OF APPEALABILITY

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant, and a "certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. *See* Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts. Seventh Circuit Rule 22(b) states: "In a habeas corpus proceeding in which detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a district court judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

To obtain a certificate of appealability under § 2253, a petitioner must demonstrate the denial of a constitutional right. This requires the petitioner to show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  Where the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Id.* at 484.

In this case I conclude that reasonable jurists would not find it debatable whether Winbush's Section 2255 motion should be denied.  Thus, I decline to issue a certificate of appealability.  If Winbush wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

## CONCLUSION

For the above reasons, Petitioner Winbush's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence is **DENIED**.  A certificate of appealability is **DENIED**.  Winbush's motion has now been denied in its entirety and the Clerk of the Court is instructed to **TERMINATE** this case as well as its corresponding civil proceeding (2:11-cv-48).

**SO ORDERED**.

ENTERED: December 8, 2011.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT